# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | |
|---|---|
| 3M COMPANY, | : |
| Plaintiff, | : Case No. 3:20-cv-443 |
| v. | : Judge Thomas M. Rose |
| PREMIUM CONTRACTOR SOLUTION, LLC, | : |
| Defendant/Third-Party Plaintiff, | : |
| v. | : |
| HK HUATENT TELECOM TECHNOLOGY CO., LTD., *et al.*, | : |
| Third-Party Defendants. | : |

**ENTRY AND ORDER GRANTING MOTION TO DISMISS OF THIRD-PARTY DEFENDANTS LAWRENCE GROUP, INC. AND XIAOLI YANG UNDER FED. R. CIV. P. 12(B)(2) (DOC. NO. 50)**

In its Amended Third-Party Complaint (Doc. No. 29) (the "Complaint"), Third-Party Plaintiff Premium Contractor Solution, LLC ("PCS") brings several causes of action against a host of Third-Party Defendants. Presently before the Court is a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(2), filed by two of those Third-Party Defendants: Lawrence Group, Inc. ("Lawrence Group") and Xioali Yang ("Yang" and, collectively, the "Lawrence Group Defendants"). (Doc. No. 50.) In the Motion to Dismiss (the "Motion"), the Lawrence Group Defendants argue that this Court lacks personal jurisdiction over them. (*Id.*) In its Opposition to the Motion (Doc. No. 51) (the "Response"), PCS argues that jurisdiction is proper under Ohio's long-arm statute and the Due Process Clause of the United States Constitution. (Doc. No. 51.)

1

No party has requested an evidentiary hearing on the Motion, and the Court will not hold one. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (district courts have discretion in determining whether to decide a Rule 12(b)(2) motion with or without holding an evidentiary hearing). For the reasons discussed below, the Court **GRANTS** the Motion and **DISMISSES** Lawrence Group and Yang from this case.

### I. BACKGROUND

On February 10, 2021, PCS filed the Complaint against (among others) Lawrence Group and its Chief Executive Officer, Yang. (Doc. No. 29.) PCS is an Ohio-based limited liability company. (*Id.* at PageID 280.) It alleges that, in July of 2020, "PCS purchased masks from HK Huatent Telecom Technology Co. Ltd., for resale in the United States." (*Id.* at PageID 282.) PCS asserts that those masks, for which it paid approximately $2 million, "were alleged to be genuine 3M Model No. 1860 N95 masks." (*Id.*)

The Complaint only alleges the following specifically regarding the Lawrence Group Defendants:

> 148. Xiaoli Yang is an individual that resides in Riverside County, California.
>
> 149. Lawrence Group, Inc., is a California corporation established and created pursuant to the laws of California and recognized in records of the Secretary of State of California.
>
> …
>
> 165. Lawrence Group, Inc., and Xiaoli Yang intentionally and fraudulently offered to sell counterfeit 3M masks to PCS and HK Huatent Telecom Technology Co., Ltd., while falsely representing to PCS that the masks were authentic.
>
> 166. Lawrence Group, Inc., and Xiaoli Yang provided HK Huatent Telecom Technology Co., Ltd., with a [Swiss company's] report certifying the quality and authenticity of the masks.
>
> 167. Lawrence Group, Inc. and Xiaoli Yang have imported and sold over 3 million counterfeit masks into the stream of commerce in the United States.

2

(*Id.* at PageID 281, 283.)  PCS also alleges that, "[a]s a result [of] the conduct of the Third-Party Defendants and subsequent seizure of the masks ordered by this Court, PCS has lost nearly $2 Million in inventory and has had its business reputation severely damaged." (*Id.* at PageID 283.) PCS' claims against the Lawrence Group Defendants and other defendants include violation of 15 U.S.C. § 1125, violation of Ohio Rev. Code Chapter 4165, common law fraud, tortious interference with contractual relationship, and civil conspiracy.  (*Id.* at PageID 284-86.)

The Lawrence Group Defendants filed the Motion on May 18, 2021, arguing this Court does not have personal jurisdiction over them.  (Doc. No. 50.)  In support of the Motion, the Lawrence Group Defendants attached declarations from Steven Zhang (an employee of Lawrence Group) and Yang.  (*Id.* at PageID 379-81, 383-85.)  Both declarations deny ever selling, soliciting, or shipping goods to Ohio, initiating business dealings with PCS in Ohio, negotiating with PCS in Ohio, or entering a contract with PCS.  (*Id.* (Zhang Decl. at ¶¶ 6–10; Yang Decl. at ¶¶ 7–11).)

In response, PCS filed an opposition brief (Doc. No. 51) (the "Opposition") and a declaration from Dexiang Bao ("Bao").  (Doc. No. 51 at PageID 399.)  The text of Bao's declaration states, in full:

> 1. I am the owner and operating member of Premium Contractor Solution, LLC.
>
> 2. From October 5, 2020 through January 22, 2021, I engaged in conversations [sic] Xiaoli Yang in her position with the Lawrence Group, Inc. regarding the sale of products purporting to be authentic 3M masks.
>
> 3. A true and accurate copy of these text messages is attached hereto.  Because the text messages are in Chinese, I have also prepared a translation of these messages to English.  A true and accurate copy of my translations are attached hereto.  In my translation, Yang is referred to as 'Lily.'
>
> 4. All of these text communications occurred while I was in Ohio.
>
> 5. Yang and I discussed payments for the masks. These payments were wired from by [sic] bank account in Ohio to the Lawrence Group.

(*Id.*)  Attached to Bao's declaration are approximately 11 pages of what appear to be cell phone

3

screen shots of text messages that are almost entirely in Chinese, followed by one page of what appears to be a side-by-side translation of text from Chinese to English. (*Id.* at PageID 401-12.)

## II. STANDARD OF REVIEW

The party seeking to establish a court's personal jurisdiction over an opposing party bears the burden of showing that such jurisdiction exists. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1261-62 (6th Cir. 1996); *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 547 (6th Cir. 2016) ("[t]he plaintiff bears the burden of establishing the existence of personal jurisdiction"). When a court resolves a "Rule 12(b)(2) motion solely on written submissions,[1] the plaintiff's burden is relatively slight, and the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal." *AlixPartners*, 836 F.3d at 548-49 (internal quotation marks omitted). "The plaintiff meets this burden by setting forth specific facts showing that the court has jurisdiction." *Id.* (internal quotation marks omitted). "The pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and the district court should not weigh the controverting assertions of the party seeking dismissal." *Id.* (internal quotation marks omitted); *see also Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 153 (6th Cir. 1997) ("[i]n deciding a motion to dismiss for want of personal jurisdiction, the court must, of course, view the affidavits, pleadings, and documentary evidence in the light most favorable to the plaintiff," and the court may also consider "undisputed factual representations of the" moving party that "are consistent with the representations of the" non-moving party).

---

[1] A different standard applies when the Court has conducted an evidentiary hearing. *Theunissen*, 935 F.2d at 1458.

### III. ANALYSIS

#### A. Bao's Translation of Text Messages

The Court first addresses whether to consider the alleged Chinese-to-English translation of text messages attached to Bao's declaration (Doc. No. 51 at PageID 412) in deciding the Motion. The Lawrence Group Defendants object to the Court's consideration of the translation, pointing out that the translation was prepared by Bao himself (PCS's owner) and is uncertified. (Doc. No. 54 at PageID 420, 422.) Although Bao states that the document attached to his declaration is an accurate copy of his translation, he does not state that the translation itself is accurate, and PCS provides no information to indicate that Bao is a certified translator or is otherwise qualified or skilled in making translations from Chinese to English. (Doc. No. 51 at PageID 399-412.)

Before relying on the translation of a document written in a foreign language, courts should consider whether—and ensure that—the translation is reliable. When reliability is in dispute, the focus is on the translation's accuracy and accounts for whether the person who made the translation is competent to make the translation and any potential bias. *See, e.g., Park v. Secolsky*, 787 F. App'x 900, 906 (7th Cir. 2019) (upholding district court's exclusion of a document translated by the plaintiff herself when "she did not attempt to have it translated or verified by an independent third party"; the district court could not be certain of the translation's accuracy); *see also Sun v. The Governmental Auths. on Taiwain*, No. C 94-2769 SI, 2001 U.S. Dist. LEXIS 1160, 2001 WL 114443, at *7 (N.D. Cal. Jan. 24, 2001) (in the context of a motion to dismiss, declining to consider translations of documents in a foreign language whose accompanying declaration failed "to indicate who did the translations and the translator's competency"); *Jiajie Zhu v. Jing Li*, No. 19-cv-02534, 2019 U.S. Dist. LEXIS 199628, 2019 WL 6050961, at *5 (N.D. Cal. Nov. 15, 2019) (in the context of a motion to dismiss, finding translation of a document that stated "Certified Translation" at the top was "not properly authenticated" where the accompanying declaration

5

"only states that that copy provided is a 'true and correct' copy of the certified English translation and says nothing about the translator or his or her expertise"); *cf. Ramaj v. Gonzales*, 466 F.3d 520, 530 (6th Cir. 2006) (in the context of an immigration proceeding, and in light of a Code of Federal Regulations requirement that "[a]ny document submitted in an immigration proceeding that is written in a foreign language must be completely translated into English," upholding judge's exclusion of translation where there was no "statement by the translator both that he or she was competent to translate the document from Albanian to English and that the translation is correct to the best of his or her ability").

In support of their argument, the Lawrence Group Defendants direct the Court to *In re Application for Discovery Pursuant to 28 U.S.C. § 1782*, No. 1:19-mc-0102, 2020 U.S. Dist. LEXIS 10243, 2020 WL 364222 (N.D. Ohio Jan. 22, 2020). (Doc. No. 54 at PageID 422.) In that case, a party moved to vacate a court's prior order. *In re Application for Discovery Pursuant to 28 U.S.C. § 1782*, 2020 WL 364222, *1. The party's motion attached a declaration, which included an exhibit consisting of the party's "own unauthenticated English translation of an Italian court's order." *Id.*, at *2. The court found that the "document must be excluded" from consideration. *Id.*

Here, the Court finds that Bao's translation is unreliable and, therefore, will not consider it in deciding the Motion. No one verified the accuracy of the translation. And, there is no indication that Bao has the skills or qualifications to make the translation. Additionally, given his position as the owner and operating member of PCS (*see* Doc. No. 51 at PageID 399), Bao has an interest in the dispute that raises a potential conflict of interest in translating the text messages. This potential conflict is only increased by the fact that he translated some of his own texts.

The Court also will not consider the text messages themselves, which are almost entirely in Chinese apart from some numbers (*see* Doc. No. 51 at PageID 401-11). *Luxottica Grp. S.P.A.*

*v. P'ships and Unincorporated Ass'ns Identified on Schedule "A"*, 391 F. Supp. 3d 816, 823 (N.D. Ill. 2019) (disregarding screenshots submitted with motion to dismiss where, "[a]lthough they contain recognizable mailing addresses, defendants' screenshots appear to be written in the Chinese language" and defendants "provided no English translations"); *In re Application for Discovery Pursuant to 28 U.S.C. § 1782*, 2020 WL 364222, at *2 n. 6 (filing the foreign-language document itself did not "cure the lack of authentication of the translation" of that document previously made by the filer); *cf. González–De–Blasini v. Family Dep't*, 377 F.3d 81, 88-89 (1st Cir. 2004) (in the context of a rule that federal litigation in Puerto Rico must be conducted in English and that parties should submit only English-language materials, explaining that the "district court should not have considered any documents before it that were in the Spanish language").  In sum, the Court will not consider Bao's translation of the text messages, or the text message themselves, for purposes of deciding the Motion.

### B. Personal Jurisdiction

PCS argues this Court has personal jurisdiction over each of the Lawrence Group Defendants under the Ohio Long Arm Statute and the Due Process Clause via both general and specific jurisdiction.  (Doc. No. 51 at PageID 394.)

#### 1) Overarching principles

"To determine whether personal jurisdiction exists over a defendant, federal courts apply the law of the forum state, subject to the limits of the Due Process Clause of the Fourteenth Amendment."  *CompuServe*, 89 F.3d at 1262; *see also Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) ("[t]he Fourteenth Amendment's Due Process Clause limits a state court's power to exercise jurisdiction over a defendant").  A tribunal's authority to exercise personal jurisdiction over a defendant "depends on the defendant's having such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our federal system

7

of government,' and 'does not offend traditional notions of fair play and substantial justice.'" *Ford Motor*, 141 S. Ct. at 1024 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316-17 (1945)). The focus of that analysis is "on the nature and extent of 'the defendant's relationship to the forum State.'" *Id.* (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal. San Francisco Cnty.*, 137 S. Ct. 1773, 1779 (2017)). That focus led to the recognition of two kinds of personal jurisdiction: general and specific. *Ford Motor*, 141 S. Ct. at 1024. The difference between them is in the "nature of the [defendant's] contacts." *CompuServe*, 89 F.3d at 1263.

General jurisdiction can be exercised "only when a defendant is essentially at home in the State." *Ford Motor*, 141 S. Ct. at 1024 (internal quotation marks omitted). "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol-Myers Squibb*, 137 S. Ct. at 1780 (emphasis in original). In other words, the claim "need not relate to the forum State or the defendant's activity there; [the claim] may concern events and conduct anywhere in the world." *Ford Motor*, 141 S. Ct. at 1024. However, "[o]nly a select set of affiliations with a forum will expose a defendant to such sweeping jurisdiction." *Id.* (internal quotation marks omitted). Specifically, an individual "is subject to general jurisdiction in her place of domicile" and a corporation is subject to general jurisdiction in "its place of incorporation and principal place of business." *Id.*

This Court also notes that "[t]he Ohio legislature recently revised the state's long-arm statute to permit general jurisdiction over non-resident defendants where it was not recognized before." *Premier Prop. Sales Ltd. v. Gospel Ministries Int'l, Inc.*, No. 3:21-cv-14, --- F. Supp. 3d ---, 2021 U.S. Dist. LEXIS 93056, 2021 WL 1964613, at *2 n. 2 (S.D. Ohio May 17, 2021); *see* Ohio Rev. Code § 2307.382(C) ("In addition to a court's exercise of personal jurisdiction under division (A) of this section, a court may exercise personal jurisdiction over a person on any basis

8

consistent with the Ohio Constitution and the United States Constitution"). Prior to the statute's amendment (which became effective within the past year), "[c]ourts construed the statute as foreclosing general jurisdiction because personal jurisdiction was only proper if the plaintiff's claim arose out of one of the statutorily identified actions" in its division (A). *Premier Prop. Sales Ltd.*, 2021 WL 1964613, at *2 n. 2.

Specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Ford Motor*, 141 S. Ct. at 1024. The court's exercise of jurisdiction "must be both authorized by the forum State's long-arm statute and in accordance with the Due Process Clause of the Fourteenth Amendment." *AlixPartners*, 836 F.3d at 549.

Regarding the first requirement (i.e., authorization by the forum State's long-arm statute), the forum state in this case is Ohio. Ohio's long-arm statute is set forth at Ohio Rev. Code § 2307.382. Under that long-arm statute, a court may exercise personal jurisdiction over a person if the cause of action arose from at least one of nine categories set forth in the subsections of the statute's division (A). Ohio Rev. Code § 2307.382(A).

Regarding the second requirement (i.e., the exercise of jurisdiction is in accordance with the Due Process Clause of the Fourteenth Amendment), the defendant "must take some act by which it purposefully avails itself of the privilege of conducting activities within the forum State." *Ford Motor*, 141 S. Ct. at 1024 (internal quotation marks omitted and alteration adopted). "The contacts must be the defendant's own choice and not random, isolated, or fortuitous." *Id.* (internal quotation marks omitted). "They must show that the defendant deliberately reached out beyond its home—by, for example, exploiting a market in the forum State or entering into a contractual relationship centered there." *Id.* (internal quotation marks omitted). "Yet even then—because the defendant is not 'at home'—the forum State may exercise jurisdiction in only certain cases." *Id.*

9

The claim "must arise out of or relate to the defendant's contacts with the forum." *Id.* (internal quotation marks omitted). "Or put just a bit differently, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (internal quotation marks omitted and alteration adopted).

### 2) Application of general jurisdiction

Even if the Court were to apply Ohio's long-arm statute as recently revised and interpret it as permitting general jurisdiction over non-resident defendants, PCS has not met its burden of showing that this Court can exercise general jurisdiction over either of the Lawrence Group Defendants. First, regarding Yang, the Complaint admits that she resides in California. (Doc. No. 29 at PageID 281.) Even when viewing the Complaint and declarations in a light most favorable to PCS, they do not show that Ohio is Yang's "place of domicile." *Ford Motor*, 141 S. Ct. at 1024. Second, regarding Lawrence Group, PCS has failed to show that Ohio is its "place of incorporation" or "principal place of business." *Ford Motor*, 141 S. Ct. at 1024. The Complaint admits that Lawrence Group is incorporated in California, not Ohio. (Doc. No. 29 at PageID 281.) And, there is no indication—let alone specific facts showing—that its "principal place of business" is Ohio. A corporation's "principal place of business" refers to "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010) (also explaining that this place is "often metaphorically called … the corporation's 'nerve center,'" which "will typically be found at a corporation's headquarters").

### 3) Application of specific jurisdiction – Ohio's long-arm statute

In its specific jurisdiction analysis, the Court must first determine whether PCS has shown that conduct by either of the Lawrence Group Defendants falls within Ohio's long-arm statute. PCS argues that jurisdiction is appropriate under five of the nine categories set forth in the statute.

10

### *i. Subsection (A)(2)*

PCS argues that this Court should exercise jurisdiction under subsection (A)(2) of Ohio's long-arm statute, which states that "[a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's [c]ontracting to supply services or goods in" Ohio. Ohio Rev. Code § 2307.382(A)(2). "Jurisdiction under this subsection is proper only when the defendant was obligated to deliver goods or services in Ohio." *Premier Property Sales Ltd.*, 2021 WL 1964613, at *4 (internal quotation marks and emphasis omitted).

PCS asserts in its Opposition brief that subsection (A)(2) applies because the Lawrence Group Defendants "contracted to sell the masks to PCS in Ohio." (Doc. No. 51 at PageID 393.) However, that assertion is not supported by any facts in the pleadings or declarations. When viewing the pleadings and declarations in a light most favorable to PCS, there is support that the Lawrence Group Defendants offered to sell masks to PCS and negotiated with PCS regarding the sale of masks. (Doc No. 29 at PageID 283; Doc. No. 51 at PageID 399.) Yet, the <u>only connections to Ohio</u> are that (1) Bao (PCS), not Yang (Lawrence Group), was in Ohio when he sent texts to Yang regarding the sale of the masks and (2) Bao (PCS) wired payments for the masks from an Ohio bank account. (*Id*.) This does not demonstrate that the Lawrence Group Defendants contracted to <u>supply services or goods in Ohio</u>. Ohio Rev. Code § 2307.382(A)(2). Therefore, this Court cannot exercise jurisdiction under subsection (A)(2). *Premier Property Sales Ltd.*, 2021 WL 1964613, at *4 ("Because Defendant was under no obligation to deliver the airplane to Ohio, it did not 'supply services or goods' in Ohio") (quoting Ohio Rev. Code § 2307.382(A)(2)); *Brunner v. Hampson*, 441 F.3d 457, 463-64 (6th Cir. 2006) (finding no jurisdiction under subsection (A)(2) where plaintiff did not provide any "factual basis to show that [defendant] supplied any goods in Ohio" or explanation regarding what services defendant allegedly provided in Ohio).

11

> ii. *Subsections (A)(4) & (5)*

PCS groups its arguments for jurisdiction under Ohio Rev. Code §§ 2307.382(A)(4) and (5) together. Subsection (A)(4) allows a court to "exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's [c]ausing tortious injury in this state by an act or omission outside this state if the person regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state." Ohio Rev. Code § 2307.382(A)(4). Subsection (A)(5) involves "[c]ausing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when the person might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that the person also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state." Ohio Rev. Code § 2307.382(A)(5).

Thus, to demonstrate specific jurisdiction under either subsection, one requirement is that PCS must, through specific facts, show that a defendant (1) "regularly does or solicits business" in Ohio; or (2) "engages in any other persistent course of conduct" in Ohio; or (3) "derives substantial revenue from goods used or consumed or services rendered" in Ohio. Ohio Rev. Code § 2307.382(A)(4), (A)(5). PCS has not done so with respect to either of the Lawrence Group Defendants. "Regular in-state business dealings require proof that the defendant's in-state activities are more than sporadic." *Premier Property Sales Ltd.*, 2021 WL 1964613, at *5 (internal quotation marks omitted). "'Persistent course of conduct' means any conduct that is continuous and not just sporadic; it contemplates a quality of contacts in Ohio different from those involved in doing business in Ohio." *Retail Serv. Sys., Inc. v. Mattress Clearance Ctrs. of Am., LLC*, No. 2:17-CV-746, 2018 U.S. Dist. LEXIS 130872, 2018 WL 3716896, at *6 (S.D. Ohio Aug. 3, 2018).

"'Substantial revenue is a flexible term, but courts view in-state sales that amount to 5% or less than total sales as insufficient." *Premier Property Sales Ltd.*, 2021 WL 1964613, at *5 (internal quotation marks omitted).

PCS argues that this Court should exercise jurisdiction under subsections (A)(4) and (5) because "[t]he sale of over 100,000 thousand [sic] counterfeit masks caused injury to PCS in Ohio" and "damaged [PCS's] business and [its] business relationships." (Doc. No. 51 at PageID 394.) However, that assertion (even assuming that it is meant to relate to the Lawrence Group Defendants and not only to other Third-Party Defendants), does not show that the Lawrence Group Defendants (1) "regularly" do or solicit business in Ohio; or (2) engaged in a "persistent" course of conduct in Ohio; or (3) that any of those counterfeit masks ended up being "used or consumed … in Ohio." Ohio Rev. Code § 2307.382(A)(4), (A)(5). Therefore, this Court cannot exercise jurisdiction under subsections (A)(4) or (A)(5). *Oxford Lending Grp., LLC v. Underwriters at Lloyd's London*, No. 2:10-cv-94, 2011 U.S. Dist. LEXIS 8931, 2011 WL 335954, at *5 (S.D. Ohio Jan. 31, 2011) (finding subsection (A)(4) inapplicable because "[t]here is simply no evidence that [defendant] regularly does or solicits business, or engages in any other persistent course of conduct in Ohio, or that [defendant] otherwise derives substantial revenue from goods used or consumed or services rendered in Ohio").

### iii. *Subsection (A)(6)*

PCS also contends that this Court should exercise jurisdiction under subsection (A)(6) of Ohio's long-arm statute, which involves "[c]ausing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when the person might reasonably have expected that some person would be injured thereby in this state." Ohio Rev. Code § 2307.382(A)(6). District courts have found that fraudulent communications or misrepresentations directed at Ohio residents can satisfy this subsection. *Schneider v. Hardesty*,

13


669 F.3d 693, 700 (6th Cir. 2012).

PCS argues that subsection (A)(6) applies because "[d]eliberately placing fake 3M masks into the Ohio marketplace while fraudulently relaying that they were authentic to an Ohio company implies an intent to injure individuals and a reasonable expectation that injuries would occur in Ohio." (Doc. No. 51 at PageID 394.) PCS's arguments make clear that the persons (allegedly) tortiously injured are mask users. However, its assertion that the Lawrence Group Defendants "plac[ed] fake 3M masks into the Ohio marketplace" is wholly unsupported. PCS points to nothing in the pleadings or declarations that indicate any masks affiliated with the Lawrence Group Defendants (or otherwise) ever reached Ohio or that any such masks were or may be used in Ohio. Therefore, this Court finds that PCS has not shown that subsection (A)(6) applies to either of the Lawrence Group Defendants. *See Residential Fin. Corp. v. Lawver*, No. 2:13-cv-1145, 2014 U.S. Dist. LEXIS 67568, 2014 WL 2006998, at *4 (S.D Ohio May 16, 2014) (in case involving California customers, finding subsection (A)(6) inapplicable where the plaintiff failed to allege any connection between defendants and Ohio—including no indication that defendants knew plaintiff was an Ohio company or that any of the business opportunities involved Ohio).

### iv. Subsection (A)(1)

Finally, PCS argues that this Court should exercise jurisdiction under subsection (A)(1) of Ohio's long-arm statute, which states that "[a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's [t]ransacting any business in" Ohio. Ohio Rev. Code § 2307.382(A)(1). The Ohio Supreme Court has stated that this subsection is "very broadly worded and permit[s] jurisdiction over nonresident defendants who are *transacting any* business in Ohio." *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St. 3d 73, 559 N.E.2d 477, 480 (Ohio 1990) (emphasis in original). The Ohio Supreme Court has also explained that the word "transact" means "'to prosecute

negotiations; to carry on business; to have dealings … The word embraces in its meaning the carrying on or prosecution of business negotiations but it is a broader term than the word 'contract' and may involve business negotiations which have been either wholly or partly brought to a conclusion.'" *Id.* (quoting Black's Law Dictionary (5th ed. 1979)) (emphasis removed).

"Courts evaluate the 'transacting any business' test on a case-by-case basis because its general terms lend to a fact-sensitive analysis." *Premier Prop. Sales Ltd.*, 2021 WL 1964613, at *3; *see also U.S. Sprint Commc'ns Co. Ltd. P'ship v. Mr. K's Foods, Inc.*, 68 Ohio St. 3d 181, 1994-Ohio-504, 624 N.E.2d 1048, 1052 (Ohio 1994) ("[b]ecause it is such a broad statement of jurisdiction, R.C. 2307.382(A)(1) has given rise to a variety of cases which have reached their results on highly particularized fact situations, thus rendering any generalization unwarranted") (internal quotation marks omitted). For purposes of the subsection, a party can transact business in Ohio despite "maintain[ing] no physical presence in" the state. *Kentucky Oaks Mall*, 559 N.E.2d at 480. However, "the mere solicitation of business by a foreign corporation does not constitute transacting business in Ohio." *U.S. Sprint Commc'ns*, 624 N.E.2d at 1052. Furthermore, "payment to a non-resident from the forum state -- standing alone -- does not establish the non-resident's connection to the forum state." *Premier Prop. Sales Ltd.*, 2021 WL 1964613 at *4. And, "[m]erely directing communications to an Ohio resident for the purpose of negotiating an agreement or fulfilling a contract, without more, is insufficient to establish that a defendant transacts business in the state." *Id.*, at *3 (internal quotation marks omitted). "Rather, there must additionally be some continuing obligation that connects the nonresident defendant to the state or some terms of the agreement that affect the state." *Id.* (internal quotation marks omitted).

In support of its argument that subsection (A)(1) applies, PCS asserts in its Opposition brief that the Lawrence Group Defendants "negotiated for the sale of the masks and delivered the masks

15

in Ohio." (Doc. No. 51 at PageID 393.)  Again, when viewing the pleadings and declarations in a light most favorable to PCS, there is support that the Lawrence Group Defendants offered to sell masks to PCS and negotiated with PCS regarding the sale of masks.  (Doc No. 29 at PageID 283; Doc. No. 51 at PageID 399.)  Yet, the <u>only connections to Ohio</u> are that (1) Bao (PCS), not Yang (Lawrence Group), was in Ohio when he sent texts to Yang regarding the sale of the masks and (2) Bao (PCS) wired payments for the masks from an Ohio bank account.  (*Id.*)  There is no support for PCS's assertion in its Opposition brief that the Lawrence Group Defendants "delivered the masks in Ohio." (Doc. No. 51 at PageID 393.)  Also, no facts indicate that the Lawrence Group initiated the negotiations[2] or that there is or was "some continuing obligation that connects the [Lawrence Group Defendants] to the state or some terms of the agreement that affect the state." *Premier Prop. Sales Ltd.*, 2021 WL 1964613, at *3 (internal quotation marks omitted).  The Court finds that PCS has failed to meet its burden in setting forth facts sufficient to confer personal jurisdiction over either of the Lawrence Group Defendants under the "transacting business" subsection of Ohio's long-arm statute.[3]  *See Shaker Constr. Grp., LLC v. Schilling*, No. 1:08-cv-278, 2008 U.S. Dist. LEXIS 79645, 2008 WL 4346777, at *3-4 (S.D. Ohio Sept. 18, 2008) (despite

---

[2] The only assertions on this point are the undisputed factual representations in the Lawrence Group Defendants' declarations, which deny initiating business dealings with PCS.  (Doc. No. 50 at PageID 379-81, 383-85.)

[3] The cases cited by PCS are distinguishable.  For example, in *Russian Collections, Ltd. v. Melamid*, No. 2:09-cv-300, 2009 U.S. Dist. LEXIS 113733, 2009 WL 4016493, at *4 (S.D. Ohio Nov. 18, 2009), the defendant conducted negotiations with an Ohio company from within Ohio; the parties' letter of intent and agreement were drafted in Ohio; the defendant returned the agreement to Ohio after signing it; the defendant was required under the agreement to send all communications under the agreement to plaintiff in Ohio; and the defendant owed several continuing obligations to plaintiff in Ohio.  In *Barnabus Consulting Ltd. v. Riverside Health Sys., Inc.*, No. 07AP-1014, 2008-Ohio-3287 (Ohio Ct. App. 2008)—an Ohio appellate court case decided in accordance with Ohio procedural rules—the defendant had initiated the parties' business relationship; defendant's vice president had negotiated and agreed to a contract through telephone and email while plaintiff's representative was in Ohio; most of plaintiff's work on the project occurred in Ohio; and defendant remitted contractual payments to Ohio.  In *Diversa, Inc. v. Penn. Substance Abuse Info. Ctr.*, No. 95-P-0028, 1996 Ohio App. LEXIS 1222, 1996 WL 200629, at *4 (Ohio Ct. App. Mar. 29, 1996)—an unpublished Ohio appellate court case decided in accordance with Ohio procedural rules—the defendant initiated contract negotiations with plaintiff in Ohio; the negotiations were carried on by mail and telephone with plaintiff at its Ohio office; the signed contracts were sent to plaintiff in Ohio; plaintiff performed the vast majority of services under the contracts in Ohio, as contemplated by the parties; and an ongoing relationship was established requiring defendant to transmit all payments to plaintiff in Ohio.

defendants' representatives directing communications to plaintiff in Ohio concerning business negotiations and defendants' representative traveling to Ohio to negotiate the terms, the district court refused to exercise jurisdiction under Ohio Rev. Code § 2307.382(A)(1) where there was no allegation that defendants initiated the negotiations and the negotiations pertained to a project located outside of Ohio); *Oxford Lending Grp., LLC*, 2011 WL 335954, at *4-5 (finding that defendant "did not transact business in Ohio under the meaning of Subsection (A)(1) of Ohio's long-arm statute" where nothing indicated that defendant "reached out" to plaintiff; defendant communicated to plaintiff in Ohio because that is where plaintiff was located; the communications were by telephone, fax, email, or mail; and the transactions between defendant and plaintiff where defendant served as an escrow agent "were isolated circumstances and were not part of a continuing or long-term business relationship").

In sum, PCS has failed to show that this Court can assert personal jurisdiction over either of the Lawrence Group Defendants under any of the categories in Ohio's long-arm statute. Therefore, the Court need not evaluate whether jurisdiction is proper under the Fourteenth Amendment's Due Process Clause.[4]  *AlixPartners*, 836 F.3d at 549 (the court's exercise of

---

[4] Prior to the recent amendment of Ohio's long-arm statute (discussed above), the Sixth Circuit explained that "the Ohio Courts have not clarified the differences between state-law and constitutional analysis." *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 430 (6th Cir. 2006). The Sixth Circuit determined that "'transacting any business' is coextensive with the Due Process clause." *Id.* at 432. In the context of analyzing subsection (A)(1) of Ohio's long-arm statute, the court explained that, under Ohio law, the mere existence of a contract, the mere solicitation of business, or activity having a mere impact on commerce in Ohio are insufficient to create personal jurisdiction. *Id.* at 431-32. The court then stated that "[t]hese holdings are in complete agreement with constitutional holdings disallowing reliance on random, fortuitous, and attenuated contacts and instead emphasizing the importance of ongoing, substantive contacts in the forum state. As a result, we conclude that the Ohio 'transacting any business' standard is coextensive with the purposeful availment prong of constitutional analysis." *Id.* at 432. To the extent that it may be deemed necessary, the Court finds that, even if PCS had shown that the Lawrence Group Defendants "transact[ed] any business" in Ohio in accordance with subsection (A)(1) of Ohio's long-arm statute, PCS did not show that this Court can assert personal jurisdiction over the Lawrence Group Defendants because PCS has not shown that either of them took "some act by which [they] purposefully avail[ed] [themselves] of the privilege of conducting activities within the forum State." *Ford Motor*, 141 S. Ct. at 1024. The Court finds that neither of the Lawrence Group Defendants have "such 'contacts' with [Ohio] that 'the maintenance of the suit' is reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'" *Id.* at 1024 (quoting *International Shoe*, 326 U.S. at 316-17).

jurisdiction "must be both authorized by the forum State's long-arm statute and in accordance with the Due Process Clause of the Fourteenth Amendment"); *Premier Prop. Sales Ltd.*, 2021 WL 1964613, at *5.

## IV. CONCLUSION

PCS has not made the requisite *prima facie* showing that personal jurisdiction exists in this Court over Lawrence Group or Yang. For the reasons stated above, the Court **GRANTS** the Motion to Dismiss of Third-Party Defendants Lawrence Group, Inc. and Xiaoli Yang Under Fed. R. Civ. P. 12(B)(2) (Doc. No. 50). Both Lawrence Group and Yang are dismissed from this case.[5]

**DONE** and **ORDERED** in Dayton, Ohio, this Tuesday, August 24, 2021.

s/Thomas M. Rose

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

---

[5] The Court acknowledges the valuable contribution and assistance of judicial intern Noah Brown.